**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| **JEFF MOWRY,** Plaintiff, v. **TOWN OF ACTON,** Defendant | **Case No.** |

**PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Jeff Mowry, by and through undersigned counsel, hereby files the following complaint against Defendant Town of Acton as follows:

**INTRODUCTION**

1. This action alleges retaliation against Plaintiff Jeff Mowry for engaging in protected activity by opposing discriminatory behavior in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 *et seq*. ("Title VII"), and the Maine Human Rights Act, 5 M.R.S. § 4571 *et seq*. ("MHRA").

2. This action also alleges whistleblower retaliation against Plaintiff Jeff Mowry for engaging in protected activity by reporting unsafe or illegal activities by his employer.

3. This case challenges Defendant's: (1) retaliation against Plaintiff in violation of the Title VII and MHRA; and (3) retaliation against Plaintiff for engaging in protected conduct under the Maine Whistleblower Protection Act.

## THE PARTIES

4. Plaintiff Jeff Mowry ("Mowry") is an individual residing in the Town of Springvale, County of York, and State of Maine.

5. Defendant Town of Acton, also known and hereinafter referred to as "Acton," is a town within the County of York, State of Maine.

6. Acton has employed more than 50 full time employees for each of 20 or more calendar weeks for the past two years.

## JURISDICTION AND VENUE

7. Prior to filing this Complaint, Mowry filed a charge of discrimination with the Maine Human Rights Commission and the EEOC and received a notice of right to sue letter pursuant to 5 M.R.S.A. § 4621 on or about September 19, 2023.

8. Plaintiff has fully complied with the procedural requirements of 5 M.R.S.A. §4622(1)(A) and 42 U.S.C. §2000e-5.

9. Venue is proper in this Court because all of the discriminatory practices alleged herein occurred in the County of York and State of Maine.

10. The Court has federal question subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331.

## STATEMENT OF FACTS

11. Jeff Mowry ("Mowry") began working for the Town of Acton on May 19, 2020 as a seasonal helper.

12. Jeff Mowry ("Mowry") began working for the Town of Acton on May 19, 2020, as a seasonal helper.

13. Mowry reported to the Superintendent Robert Mann ("Mann").

14. In October of 2020 Mowry became a full-time employee when Mann terminated an employee named John Morse, who had asthma and made requests for accommodations.

15. Mowry believes he performed his duties satisfactorily.

16. In the summer of 2021, a younger town resident named Miguel that frequently came to the dump arrived without his sticker but in the same vehicle he had been coming in all year.

17. Mann came out and told Miguel he could not dump without his sticker present.

18. Mann said to Mowry "You gotta do a better job watching the blacks because they're all trying to get away with something."

19. Mowry asked Mann why he told the man to leave when Mann knew who Miguel was, as he had been coming all summer while working on a project and Mann had personally issued him the sticker.

20. Miguel later returned to the transfer station with his sticker. Mowry apologized to Miguel for the inconvenience.

21. Mowry was very bothered by the statement Mann made as he often said offensive, racist, and sexist remarks. Therefore, in August of 2021 Mowry requested a meeting with Human Resources and the transfer station liaison David Winchell because of the most recent racist comment.

22. Mann learned of Mowry's request for a meeting and immediately started treating Mowry poorly.

23. For example Mann assigned work to Mowry that could not be completed when the transfer station was open because it was unsafe. Mowry told Mann he would build the ramp, but not while the transfer station was open because of safety issues. Mann also threw Mowry's tools in the compactor.

24. On August 13, 2021, Mowry met with Jennifer Roux ("Roux"), Town Clerk/Tax Collector/Registrar of Voters and the Town Selectmen in Executive Session and reported the racist comment Mann made about "the blacks." Mowry asked the Town, if this is how you want me to conduct myself tell me now and I'll part ways.

25. On August 19, 2021, the Town held another Executive Session in which the Town questioned Mowry about alleged insubordination Mann raised for not building the ramp as requested while the transfer station was open. They also provided that Mowry should have put a lock out/tag out on the compactor so that the machine did not ruin his tools when Mann threw them in. Mowry reported to the Town that the compactor was illegally installed because it does not have a lockout/tagout and is therefore not safe.

26. On September 8, 2021, the Town issued a written warning to Mowry for not building the ramp and told Mowry to do whatever Mann directs him to do.

27. The retaliation from Mann continued.

28. Mann walked by Mowry and called him a faggot.

29. Mowry purchased a coffee machine for the transfer station, Mann ripped the cord off it so that it no longer worked. When Mowry asked him what happened to it, Mann responded "It's in the trash—you're used to digging through trash."

30. Mann aggressively kicked open the bathroom door knowing that Mowry was using the bathroom.

31. On one occasion, to Mowry's surprise, Mann helped Mowry. Mowry thanked Mann. In response Mann said. "You're welcome, I would have done it for a white guy" implying that Mowry was not white.

32. During Covid two women from Connecticut were living in Acton, one of the women was black. Mann screamed at the woman "We don't want your filth here." Mann followed up that comment stating "I'm not a racist but them blacks are slobs."

33. Mowry reported this statement and Selectman David Winchell responded "Well we don't have any in town so I don't see a problem if he did say that."

34. Mann once stated that people call him a racist because he voted for Trump.

35. Mowry learned that Mann was stepping down from his superintendent position and taking over Mowry's position. Mowry applied for the Superintendent position, but was told he would not be hired as Superintendent on October 20, 2021.

36. Selectmen Ed Walsh was hired to become the new superintendent, but Mowry reported that it was a violation of law for a selectman to work as management in the Town.

37. On November 6, 2021, the Town laid off Mowry for "lack of work" but allowed seasonal employees to remain employed despite Mowry being a full-time employee.

38. Mowry attempted to apply for unemployment with the MDOL, but learned the Town of Acton did not report him as an employee to either the state or their unemployment insurance carrier. MDOL explained that the Town needed to rehire Mowry as he was a full-time employee that was laid off while seasonal employees remained employed.

39. On November 22, 2021, counsel for Mowry contacted Roux with a preservation letter, notice of claim, and request for personnel file.

40. Shortly thereafter Roux asked Mowry if he was still interested in the Superintendent position.

41. Mowry was rehired by the Town as the Superintendent with an anticipated start date of January 3, 2022. Mowry was expected to work 35 hours per week.

42. Mowry believes he was rehired only to temporarily refute or veil any claim of retaliation.

43. On December 31, 2022, Mowry was told he would not begin until January 16, 2022, because Mann did not want to step down.

44. When Mowry was nearly ready to begin, Mann threw out the work computer so that Mowry would not have access to it.

45. Mann also refused to hand over the keys to Mowry.

46. On multiple occasions Mowry observed Mann sexually harass employees. Mowry was lifting a heavy object and exerted himself causing veins to be visible. Mann grabbed his crotched and said "I got a vein for you right here."

47. Mann also used to hit on a female employee named Jackie.

48. Whenever a woman walked in or out of the building Mann said "You know what I would do with that."

49. Mowry suggested to Selectwoman Kim Horn that the Town have Sexual Harassment Training because of the sexual harassment he observed. Horn agreed with Mowry. Selectman Winchell responded to Mowry "I don't hide that I don't like you."

50. Mowry complained to Roux that he wasn't being properly compensated according to the agreement. Acton did not compensate Mowry at the rate he agreed to.

51. In February 2022 there was a significant snowstorm. Roux screamed at Mowry for not having a small portion of the parking lot cleared off because the storm continued and was packed deep with frozen ice. Mowry explained it was his day off—he was only allowed to work 35 hours per week. Roux told Mowry "You don't get any day off working for the town.

52. Mowry was brought into the office and yelled at for various performance issues. Roux complained that he wasn't cleaning the bathrooms adequately.

53. On March 2, 2022, the Town terminated Mowry's employment.

54. Mowry applied for unemployment and learned that the town reported he worked two hours per week at a rate of $325 per hour. Due to the low number of hours, he was deemed ineligible for unemployment.

55. Mowry also learned the Town was not paying his MainePers retirement benefits.

56. Mowry believes the Town retaliated against for reporting racist and sexist comments by Mann.

57. Mowry believes the Town retaliated against him for making good faith reports of safety violations and violations of law.

58. Mowry believes the Town retaliated against him for reporting sexual harassment.

59. Acton retaliated against Mowry because of his complaints of discrimination and having an attorney send notice of his intention to pursue a claim of retaliation based on his complaints of discrimination by Mann on November 22, 2021.

60. Acton has engaged in willful, knowing retaliation against Mowry for his complaints of conduct illegal under Title VII and the Maine Human Rights Act and complaints of safety violations.

**COUNT I – RETALIATION IN VIOLATION OF TITLE VII**
**(42 U.S.C. §§ 2000e, et seq.)**

61. Plaintiff repeats the allegations contained in Paragraphs 1 through 60 as if fully stated herein.

62. Defendant retaliated against Plaintiff for opposing a practice made unlawful by Title VII and the MHRA.

63. Plaintiff specifically made a report of racist, sexist, and discriminatory behavior that violated Title VII and the MHRA to Defendant, but Defendant took no corrective actions in response.

64. Instead, Defendant took adverse action against Plaintiff because of his reports of discrimination by terminating his employment twice, failing to contribute to MainePers, and failure to accurately report his hours worked.

65. As a result of Defendant's retaliation, Mowry has suffered and is entitled to damages, including but not limited to: lost wages and benefits, front pay, compensatory damages including emotional pain and suffering and lost enjoyment of life, attorney's fees, costs and expenses.

**WHEREFORE,** Plaintiff Jeff Mowry respectfully requests that the Court enter judgment in his favor and against Defendant Acton and award him damages for Defendant's violation of the Title VII, including economic, compensatory, liquidated, and punitive damages, attorney's fees, costs and expenses, equitable and injunctive relief, and all other relief afforded to him by law.

**COUNT II – RETALIATION IN VIOLATION OF THE MAINE HUMAN RIGHTS ACT**
**(5 M.R.S. § 4571 *et seq.*)**

66. Plaintiff repeats the allegations contained in Paragraphs 1 through 65 as if fully stated herein.

67. For all of the reasons set forth in Counts I above, unlawful retaliation against Plaintiff has taken place within the meaning of the Maine Human Rights Act.

**WHEREFORE**, Plaintiff Jeff Mowry respectfully requests that the Court enter judgment in his favor and against Defendant Acton and award him damages for Defendant's violation of the MHRA, including economic, compensatory, liquidated, and punitive damages, attorney's fees, costs and expenses, equitable and injunctive relief, and all other relief afforded to him by law.

**COUNT III –MAINE WHISTLEBLOWER PROTECTION ACT RETALIATION**
**(26 M.R.S. § 831 *et seq.*)**

**Whistleblower Retaliation**

68. Plaintiff repeats the allegations contained in Paragraphs 1 through 67 of the Complaint as if fully set forth herein.

69. Plaintiff engaged in protected activity within the meaning of the Maine Whistleblower Protection Act by reporting safety violations by the Town of Acton.

70. Mowry had a reasonable basis for believing that Defendant's conduct was illegal and unsafe.

71. Mowry also engaged in protected activity within the meaning of the Maine Whistleblower Protection Act by opposing the change in his pay without notice.

72. Mowry had a reasonable basis for believing that Defendant's conduct was illegal and violated state regulations.

73. Mowry engaged in the aforementioned protected activity in good faith.

74. Acton took adverse action against Mowry because of his protected whistleblower activity.

75. The aforementioned instance of protected conduct bears a causal relationship to the adverse employment action(s) alleged herein.

76. As a result of Acton's whistleblower retaliation, Mowry has suffered and is entitled to damages, including but not limited to: lost wages and benefits, front pay, compensatory damages including emotional pain and suffering and lost enjoyment of life, civil penal damages, attorney's fees, costs and expenses.

WHEREFORE, Plaintiff Jeff Mowry requests that the Court award him damages in the form of lost back pay, front pay, compensatory damages, civil penal damages, punitive or liquidated damages, attorney's fees, costs and expenses, equitable and injunctive relief, and all other relief afforded to him by law.

## JURY TRIAL DEMAND

Plaintiff Jeff Mowry hereby demands a jury trial on all matters so triable under the laws and Constitution of the United States and the State of Maine.

Dated: March 1, 2024

*/s/ Laura H. White*

Laura H. White, Bar No. 4025
*Attorney for Plaintiff*
WHITE & QUINLAN, LLC
62 Portland Rd., Suite 21
Kennebunk, ME 04043
(207) 502-7484
*lwhite@whiteandquinlan.com*

/s/ *Danielle Quinlan*

Danielle Quinlan, Bar No. 5480
*Attorney for Plaintiff*
WHITE & QUINLAN, LLC
62 Portland Rd., Suite 21
Kennebunk, ME 04043
(207) 502-7484
*dquinlan@whiteandquinlan.com*